# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

TRANQUIL BLUE CORPORATION
and BAM LAUNCHER, INC.,

    Plaintiffs,

v.                                  Case No: 8:16-cv-1217-T-30TBM

MICHAEL RYAN SHUHART,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon Plaintiffs' Motion for Summary Judgment (Doc. 30), Defendant's Response in Opposition (Doc. 35), Defendant's Motion for Partial Summary Judgment (Doc. 33), and Plaintiffs' Response in Opposition (Doc. 36). Upon review, the Court concludes that both motions should be granted in part and denied in part.

## BACKGROUND

Plaintiffs Tranquil Blue Corporation and Bam Launcher, Inc. filed this lawsuit against Defendant Shuhart, who worked as an independent contractor for Plaintiffs from 2010 to 2015. Generally speaking, Plaintiffs allege that Defendant stole their products and sold them without Plaintiffs' authorization. Plaintiffs contend that Defendant is liable for trademark infringement and false designation of origin under the Lanham Act (Counts I and II), similar violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count III), unjust enrichment (Count IV), and conversion (Count V).

Plaintiffs argue that they are entitled to summary judgment on Counts I through V, whereas Defendant argues that he is entitled to summary judgment on Counts I, II, and III.

**RELEVANT FACTS**

John Siebert is the sole owner of Tranquil Blue Corporation ("TBC") and Bam Launcher, Inc ("BLI"). TBC owns the registered trademark "Party with Sluts," which it uses to designate apparel. BLI owns the registered trademark "Bam Launcher" for water balloon launchers. Beginning in 2012, Plaintiffs have continuously used the "Bam Launcher" mark to market and sell Bam Launchers. Plaintiffs also sell other products, including the "Official 'Anchorman' Sex Panther Cologne," neon fanny packs, and water balloons, but they do not have any intellectual property rights related to these products.

Plaintiffs primarily sell their products online on websites like Amazon.com ("Amazon"), eBay.com ("eBay"), FratToys.com, and Frattanks.com. In addition, Plaintiffs operate a website, Bamwholesale.com, where they sell their products at their wholesale price. Anyone can buy Plaintiffs' products from the wholesale website, and Plaintiffs do not impose any restrictions on the resale of their products.

In July 2010, Siebert hired Defendant as an independent contractor for Plaintiffs. Defendant worked for Plaintiffs until September 2015, when he resigned.[1] As part of Defendant's job duties, he managed Plaintiffs' inventory of products and sold those products on the internet.

---

[1] Defendant has since started his own, competing business. Defendant did not have a non-compete agreement with Plaintiffs.

In 2011, Amazon banned Plaintiffs from selling their products on its website. As a result, in late 2011, Siebert authorized and/or encouraged Defendant to create an Amazon webstore called "Water Balloon Buffoonery" and to sell Plaintiffs' products on it. Defendant registered the webstore under his name and linked it to his personal bank account. Defendant managed this webstore until early 2013, when he passed the account over to Plaintiffs.

Apart from these details, the Parties' narratives differ significantly. According to Plaintiffs, Defendant was supposed to remit all proceeds from the webstore's sales to Plaintiffs but instead kept them for himself. Plaintiffs contend that Defendant sold the products from Plaintiffs' inventory but did not pay Plaintiffs for those products. In contrast, Defendant states that he and Siebert agreed that he would buy Plaintiffs' products at their wholesale price, sell the products on Amazon at their retail price, and then he could keep the difference between the two prices as a kind of commission for selling the products. Defendant says he did as they agreed—he bought Plaintiffs' products from their wholesale website and kept any profit he made from selling them on Amazon. Siebert encouraged this arrangement because it increased Plaintiffs' profits while supplementing Defendant's income.

Plaintiffs assert that the "Water Balloon Buffoonery" webstore was the only online platform in which Siebert authorized Defendant to sell their products. Defendant disagrees, stating that Siebert encouraged him to sell Plaintiffs' products on other webstores, including a second Amazon webstore called "Mi/New Party Foundation." Between April and May of 2013, Defendant sold 57 Bam Launchers (worth approximately $1,200) and a

few of the Sex Panther colognes (worth approximately $35) on the "Mi/New Party Foundation" webstore. Plaintiffs believe that Defendant stole those products; Defendant states that he bought them wholesale like he and Siebert had discussed. Defendant kept the profits from those sales.

After opening the "Mi/New Party Foundation" webstore, Defendant created several other webstores—one on Amazon called "Super Man/Super Magic Market" and a few on eBay. Between December 2014 and May 2015, Defendant sold 29 Bam Launchers for approximately $750 on eBay. In addition, between December 2014 and October 2016, Defendant sold Sex Panther cologne, fanny packs, and water balloons on the "Super Man/Super Magic Market" and eBay webstores. He kept all profits from these sales.

Plaintiffs contend that Defendant stole all of these products from their inventory. Defendant admits that he took 104 units of Sex Panther cologne from Plaintiffs "in a moment of weakness." He also admits that he took 29 Bam Launchers from Plaintiffs because he thought they owed him money.[2] Plaintiffs had stored inventory in Defendant's garage for two years and never paid him rent for the storage space, so he took these items as compensation for the unpaid rent. Defendant otherwise denies taking Plaintiffs' inventory. He states he bought the fanny packs and water balloons he sold from third party vendors including Gift Joint Promo and Yongkang Newwin Plastic & Metal Co., Limited.

---

[2] Although Defendant initially testified that he took "roughly 24 [or] 25" of Plaintiffs' Bam Launchers (Doc. 30-2 at 134:16-17), he later admitted that he sold 29 of them (Doc. 35, ¶ 36).

For obvious reasons, the Parties dispute how much money Defendant made selling Plaintiffs' stolen inventory. Plaintiffs estimate the monetary value to be around $150,000, whereas Defendant attests that it is closer to $5,000.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, and admissions and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

I. **Counts I, II, and III (Violations of the Lanham Act and the FDUTPA)**

The Lanham Act makes actionable "the deceptive and misleading use of [trade]marks" (i.e., the names or symbols used to identify a person's goods or services). 15 U.S.C. § 1127; *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003). In order to succeed on a trademark infringement claim, a plaintiff must show that: (1) it owns the trademark at issue; (2) the defendant used the mark in commerce without authorization; and (3) the defendant's use of the mark is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of the defendant's goods. *See, e.g., Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1350, 1361 (M.D. Fla. 2012) (internal citations omitted). A plaintiff must make a similar showing to succeed on a false designation of origin claim or an FDUTPA claim. *See Crystal Entm't Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011) (applying the legal standard for a Lanham

Act claim to an FDUTPA claim); *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (plaintiff with a false designation of origin claim must demonstrate that it has a valid trademark and that the defendant made unauthorized use of it such that consumers were likely to confuse the two).

### a) "Party with Sluts" Trademark Claims

Defendant argues that he is entitled to summary judgment on Plaintiffs' "Party with Sluts" trademark claims. In their Complaint, Plaintiffs alleged that Defendant infringed their "Party with Sluts" trademark by selling "Party with Sluts" apparel. However, Plaintiffs have not produced any evidence that Defendant used the "Party with Sluts" mark in commerce, nor did they make any arguments regarding this mark in their motion for summary judgment or their response to Defendant's motion. Accordingly, Defendant is entitled to summary judgment on these claims.

### b) "Bam Launcher" Trademark Claims

Both Parties argue that they are entitled to summary judgment on the issue of whether Defendant infringed Plaintiffs' "Bam Launcher" trademark and falsely designated the origin of the water balloon launchers he sold. The Parties do not dispute that Plaintiffs' "Bam Launcher" trademark is valid. Instead, their dispute turns upon the following issues: (1) whether Defendant had authorization to sell Plaintiffs' products; and (2) whether Defendant's use of the "Bam Launcher" mark was likely to cause consumer confusion. Summary judgment is inappropriate for the following reasons.

First, there are significant factual disputes regarding whether Defendant had Plaintiffs' authorization to sell their Bam Launchers online. Plaintiffs contend that they

7

permitted Defendant to sell their products on just the "Water Balloon Buffoonery" webstore, and they did not know he was selling them on other sites. Defendant states the opposite—that Siebert not only knew that he was selling Plaintiffs' products on other sites, but that he encouraged him to do so in order to increase Plaintiffs' profits. Without resolving this factual dispute, the Court cannot determine whether Defendant had authorization to sell Plaintiffs' products, either via their express consent, an implied license, or due to Plaintiffs' acquiescence.

Second, although the Parties do not dispute the facts relevant to the likelihood of confusion analysis, those facts are not so one-sided that a reasonable jury could arrive at only one conclusion. *See Anderson*, 477 U.S. at 250. "Although it may be decided as a matter of law, 'likelihood of confusion generally is a question of fact.'" *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 941 (11th Cir. 2010) (internal citation omitted). In determining whether there is a likelihood of consumer confusion, courts should generally evaluate seven factors:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

*All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) (internal citation omitted). That said, the court "does not have to consider all of these factors in every case and in some cases, 'new' factors may merit consideration." *Swatch Watch, S.A. v. Taxor, Inc.*, 785 F.2d 956, 958 (11th Cir. 1986).

In this case, several of the factors weigh in favor of Plaintiffs. Defendant used Plaintiffs' same trademark on Plaintiffs' same products and sold them on the same websites as Plaintiffs. On the other hand, the application of this seven-factor test seems inapt because Defendant was using Plaintiffs' mark to sell Plaintiffs' own inventory and not a competing product.

Defendant argues that he cannot be liable for trademark infringement because "the purpose of trademark law is . . . to guarantee that every item sold under a trademark is the genuine trademarked product, and not a substitute." *Gen. Elec. Co. v. Speicher*, 877 F.2d 531, 534 (7th Cir. 1989). "A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's products as his." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 367-68 (1924). Because Defendant sold only Plaintiffs' genuine trademarked products, he argues that his actions did not create any consumer confusion, or at least any that is legally actionable.

Defendant is correct that the resale of genuine trademarked goods generally does not constitute infringement. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001). "This is for the simple reason that the consumer is not confused as to the origin of the goods: the origin has not changed as a result of the resale." *Id.* However, "identical goods sold in an unauthorized manner are not necessarily genuine for purposes of the Lanham Act." *Babbit Elecs., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1180 (11th Cir. 1994). If, for example, Defendant bypassed any quality control measures that Plaintiffs utilized, his consumers did not receive the same product that Plaintiffs' consumers would have. In addition, even if Defendant's consumers were not confused about the origin of his

9

goods, they may reasonably have been confused about whether Defendant was sponsored by or affiliated with Plaintiffs, particularly if Defendant did not disclaim any association with Plaintiffs or indicate that he was reselling (as opposed to completing the initial sale of) Plaintiffs' products. Because it is possible that a reasonable jury could find that Defendant's actions created a likelihood of confusion, this issue is better for left for trial.

Lastly, the Court notes that it would not matter if Defendant's conduct caused a likelihood of confusion if the "first sale" doctrine applies, as Defendant argues. However, Defendant did not raise this affirmative defense in his answer (Doc. 19), and Defendant has not sought the Court's leave to amend its pleading. The Parties did not brief whether this omission caused any prejudice to Plaintiffs. Thus, the Court cannot consider this argument at this juncture. *See Miranda de Villalba v. Coutts & Co. (USA) Int'l*, 250 F.3d 1351, 1353 (11th Cir. 2001).

## II.   Counts IV and V (Unjust Enrichment and Conversion)

A claim for unjust enrichment is an equitable claim in which "the law will, in essence, 'create' an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it." *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999). "To succeed in a suit for unjust enrichment[,] a plaintiff must prove that: (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the

plaintiff." *Id.* (citing *Greenfield v. Manor Care, Inc.,* 705 So.2d 926, 930-31 (Fla. Dist. Ct. App. 1997)).

"[C]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Nat'l Union Fire Ins. Co. of Pa. v. Carib. Aviation, Inc.,* 759 F.2d 873, 878 (11th Cir. 1985) (quoting *Senfeld v. Bank of N.S. Trust Co. (Cayman),* 450 So.2d 1157, 1160-61 (Fla. 3d DCA 1984)). To prevail on a conversion claim under Florida law, the claimant must have "possession or an immediate right to possession of the converted property at the time of conversion." *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 271–72 (11th Cir. 2009) (internal citation omitted).

Plaintiffs have demonstrated that Defendant is liable for both unjust enrichment and conversion because Defendant admitted to taking 104 units of Sex Panther cologne and selling them for his exclusive gain. Nevertheless, the Court can only grant summary judgment on the issue of liability for this limited portion of Plaintiffs' unjust enrichment and conversion claims. Although Defendant also admitted to taking 29 of Plaintiffs' Bam Launchers, there is a question of fact as to whether he was justified in doing so due to Plaintiffs' failure to pay him rent.[3] In addition, the Parties have much larger factual disputes regarding the extent of Defendant's liability. While Plaintiffs contend that Defendant stole close to $150,000 worth of their products, Defendant flatly denies this. As

---

[3] Defendant has implied that Siebert agreed to pay him rent for use of his garage as a storage space, and Plaintiffs have supplied no evidence to refute this.

a result, the Parties will need to litigate the remainder of Plaintiffs' unjust enrichment and conversion claims.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiffs' Motion for Summary Judgment (Doc. 30) is granted in part and denied in part. Plaintiffs are entitled to a limited grant of summary judgment on their unjust enrichment and conversion claims. The Court finds the following: (1) Defendant was unjustly enriched by taking 104 units of Sex Panther cologne; and (2) Defendant unlawfully converted 104 units of Sex Panther cologne. The Parties will need to proceed to trial on the remainder of Plaintiffs' unjust enrichment and conversion claims.

2. Defendant's Motion for Partial Summary Judgment (Doc. 33) is granted in part and denied in part. Defendant is entitled to summary judgment on Plaintiffs' "Party with Sluts" trademark claims.

**DONE** and **ORDERED** in Tampa, Florida, on June 29th, 2017.

*[signature]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record